```
                                                      USDC SDNY
                                                      DOCUMENT
                                                      ELECTRONICALLY FILED
                                                      DOC #:_____
                                                      DATE FILED: 08/29/2024
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                     :
BARRY NEWMAN,                                        :
                                                     :
                              Plaintiff,             :          23-CV-3503 (KPF) (RWL)
                                                     :
             - against -                             :   **REPORT AND RECOMMENDATION**
                                                     :   **TO HON. KATHERINE POLK FAILLA:**
                                                     :         **INQUEST AFTER DEFAULT**
ASA COLLEGE, INC.,                                   :
ALEXANDER SHCHEGOL, and                              :
JOSE VALENCIA,                                       :
                                                     :
                              Defendants.            :
------------------------------------------------------------X

**ROBERT W. LEHRBURGER, United States Magistrate Judge.**

Plaintiff Barry Newman is the former Chair of the Massage Therapy Department at

ASA College, Inc. ("ASA"), a for-profit college that has gone out of business.  Newman

alleges he did not receive the pay that he was due and filed this action against ASA, its

founder and owner Alexander Shchegol, and interim President Jose Valencia

(collectively, "Defendants") for violations of the Fair Labor Standards Act (the "FLSA") and

the New York Labor Law (the "NYLL"), as well as common law claims for breach of an

oral contract, unjust enrichment, and quantum meruit.  District Judge Katherine Polk Failla

granted Newman's motion for default judgment and referred the matter to me for an

inquest on damages.  After due consideration, I recommend that the Court award

Newman damages, pre-judgment interest, attorney's fees and costs as specified below.

**FACTS**[1]

ASA is a higher education institution with locations in New York County and Kings County.  (Compl. ¶ 7.)  In addition to founding and owning ASA, Shchegol served as its President for many years until he resigned at the end of 2021, except for a period of time between 2019 and 2021.  (*Id.* ¶¶ 9, 11-15.)  Valencia became interim President of ASA after Shchegol resigned.  (*Id.* ¶ 17.) Despite his resignation, Shchegol continues to exercise operational and financial control over ASA.  (*Id.* ¶ 16.)

Newman became Chair of the Massage Therapy Department of ASA in or about April 2018.  (*Id.* ¶ 43.)  When he began working in that position, he "was promised by Defendants that he would be paid an annual salary of $62,000."  (*Id.* ¶ 44.)  From 2019 through 2022, however, Newman did not receive that salary.  Instead, in 2019, ASA paid him $54,800.30; in 2020, ASA paid him $55,690.22; in 2021 ASA paid him $54,936.68; and in 2022, ASA paid him $50,949.81.  (Newman Decl. ¶¶ 6-10 and Ex. A-D.)  Moreover, ASA paid Newman effectively on an hourly basis; he was required to clock in and out to record his time worked and was told by Defendants that his bi-weekly pay would be reduced if he worked less than 40 hours per week.  (Compl. ¶¶ 45-49; Newman Decl. ¶¶ 4, 6, 11-14.)  During all relevant times, Newman worked 45 to 50 hours per week.  (Compl. ¶ 53.)  Yet, ASA falsified time records to show that the actual time worked per week was less than 40 hours.  (Newman Decl. ¶ 20.)

---

[1] The facts are drawn from the well-plead allegations of the Complaint ("Compl." Dkt. 1); the Declaration of Barry Newman filed on January 16, 2024, at Dkt. 32-1 ("Newman Decl."), and the Declaration of Justin S. Clark, Esq., filed on January 16, 2024, at Dkt. 33-1 ("Clark Decl.").  The Court also references Plaintiff's Proposed Findings Of Fact And Conclusions Of Law at Dkt. 32 ("FFCL").  Citations appearing after multiple sentences support all preceding sentences for which there are no citations identified.

In addition, to not paying Newman for all hours worked, ASA underpaid him in other ways as well. ASA did not compensate Newman for periods of mandatory furlough, and Newman was prohibited from using his vacation time when the college was closed. (Compl. ¶¶ 50-51.) In late 2022, ASA stopped paying the third-party management company it used to facilitate purchase of subway and other commuter fares for its employees but nonetheless deducted $240 from Newman's wages that were among funds collected but not paid to the management company. (Newman Decl. ¶¶ 21-24.) And, by the time of his last payment of wages from ASA in December 2022, Newman had accrued 40 hours of paid vacation for which he was never compensated. (Newman Decl. ¶¶ 28-29, 37.)

On several occasions during 2022, Newman did not receive his bi-weekly pay on the day it was due. Specifically, wages due on April 1, 2022 were paid on April 2, 2022; wages due on August 19, 2022 were paid on August 23, 2022; wages due on September 2, 2022 were paid on September 6, 2022; wages due on September 16, 2022 were paid on September 17, 2022; wages due on October 28, 2022 were paid on November 22, 2022; wages due on November 13, 2022 were paid on November 22, 2022; and wages due on December 11, 2022 were paid on December 22, 2022. (*Id*. ¶¶ 30-31, 33.) Newman claims that due to untimely payment, he could not timely pay rent, had to take out a loan with interest, and was forced to use credit cards for living expenses, which accrued additional interest. (*Id.* ¶ 32.)

In or about November 2022, ASA lost its accreditation, effective March 1, 2023, due in part to its failure to timely pay its employees. (Compl. ¶ 20.) In a town hall meeting with faculty on November 14, 2022, Shchegol promised he would pay faculty the wages

owed plus a bonus.  (*Id.* ¶¶ 21, 25.)  Then, in the wake of Shchegol's resignation, Valencia sent emails to faculty members on January 3, 2023 and January 16, 2023, assuring them that they were not working for free, that their wages continued to accrue, and that he and Shchegol had been working to secure funding.  (*Id*. ¶¶ 26-35.)  On February 24, 2023, ASA closed its business and ended Newman's employment.  (*Id.* 73.)

The payment Newman received on December 22, 2022, covered the bi-weekly period of November 21 through December 4, 2022, and was the last payment of wages Newman received from ASA.  (Newman Decl. ¶ 33.)  He nonetheless continued to perform his regular duties through February 24, 2023.  (*Id.* ¶ 34.)  Newman received no pay for work performed from December 5, 2022 through February 24, 2023.  (*Id.* ¶ 35.)

### NEWMAN'S CLAIMS

Newman asserts the following claims:  (1) Unpaid minimum wages in violation of the FLSA and NYLL; (2) unpaid overtime wages in violation of the FLSA and NYLL; (3) unpaid regular wages in violation of  NYLL §§ 191, 193, 198; (3) unpaid accrued vacation time in violation of NYLL §§ 193 and 198; (5) unlawful deductions in violation of NYLL § 193; (6) untimely payment of wages in violation of NYLL § 191; (7) unjust enrichment; (8) quantum meruit; and (9) breach of oral contract.  (*See* Compl. ¶¶ 75-140.)

As relief, Newman seeks an award of: (1) unpaid minimum wages in the amount of $7,200.00; (2) unpaid overtime wages in the amount of $3,669.30; (3) unpaid accrued paid vacation wages in the amount of $1,087.20; (4) $240 for unlawful deductions; (5) liquidated damages for unpaid minimum wages, unpaid overtime wages, unpaid accrued vacation time, unlawful deductions, and untimely paid wages in the amount of $23,061.90; (6) economic loss damages due to breach of contract in the amount of $31,622.99; (7)

pre-judgment interest on the breach of contract damages in the amount of $8,646.36; (8) pre-judgment interest on unpaid wages in the amount of $1,169.80; (9) attorney's fees in the amount of $5,240.00; and (10) costs in the amount of $779.80.  (FFCL at 17-18.)

## PROCEDURAL HISTORY

Newman commenced this action on April 26, 2023 (Dkt. 1), and duly served the summons and complaint on each Defendant.  (Dkts. 9-11.)  None of the Defendants answered or otherwise appeared.  On July 19, 2023, Newman applied for and received certificates of default as to each Defendant.  (Dkt. 12-18.)  After the Defendants failed to respond to or appear for a hearing on an order to show cause why default judgment should not be entered, Judge Failla entered an order for default judgment on December 20, 2023.  (Dkt. 29.)  The matter was referred to me for inquest.  (Dkt. 28.)  Pursuant to a scheduling order entered on December 21, 2023 (Dkt. 30), Newman filed and served proposed findings of fact and conclusions of law and supporting declarations from Newman and his attorney, Justin S. Clark.  (Dkt. 32-34.)   Despite being duly served with the summons and complaint, order to show cause, and inquest scheduling order, none of the Defendants ever responded or appeared in the action.

## JURISDICTION

The Court has federal subject matter jurisdiction by virtue of the FLSA claims.  *See* 28 U.S.C. § 1331 (federal question jurisdiction).  The Court has supplemental jurisdiction over the NYLL claims and state common law claims, which share the same common nucleus of operative facts as Newman's FLSA claims.   *See* 28 U.S.C. § 1367 (supplemental jurisdiction).

## LEGAL STANDARDS

When a defendant defaults, all well-pled facts alleged in the complaint, except those relating to the amount of damages, must be accepted as true. *City Of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011) ("It is an ancient common law axiom that a defendant who defaults thereby admits all well-pleaded factual allegations contained in the complaint") (internal quotations marks omitted); *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009) (trial court is required to "accept all of [the plaintiff's] factual allegations as true and draw all reasonable inferences in its favor"). "This principle applies regardless of whether default is entered as a discovery sanction or for failure to defend." *Walpert v. Jaffrey*, 127 F. Supp.3d 105, 129 (S.D.N.Y. 2015) (internal quotation marks and citation omitted). The court may also rely on factual allegations pertaining to liability contained in affidavits and declarations submitted by the plaintiff. *See, e.g.*, *Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 54 (2d Cir. 1993); *Fustok v. ContiCommodity Services, Inc.*, 873 F.2d 38, 40 (2d Cir. 1989). Nonetheless, the court "must still satisfy itself that the plaintiff has established a sound legal basis upon which liability may be imposed." *Shld, LLC v. Hall*, No. 15-CV-6225, 2017 WL 1428864, at *3 (S.D.N.Y. April 20, 2017) (internal quotations marks and citation omitted); *see Finkel*, 577 F.3d at 84.

Once liability has been established, a plaintiff must provide admissible evidence establishing the amount of damages with reasonable certainty. *See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Division Of Ace Young Inc.*, 109 F.3d 105, 111 (2d Cir. 1997); *see also Lenard v. Design Studio*, 889 F. Supp.2d 518, 527 (S.D.N.Y.

2012) (in an inquest following a default, "[a] plaintiff must … substantiate a claim with evidence to prove the extent of damages").

To assess whether the plaintiff has established a sufficient basis for damages, a court has the discretion, but is not required, to hold a hearing.  *See* Fed. R. Civ. P. 55(b)(2); *Fustok*, 873 F.2d at 40.  An inquest may be conducted on the papers, without an evidentiary hearing, where there is a sufficient basis on which to calculate damages. *See Bricklayers and Allied Craftworkers Local 2, Albany, New York Pension Fund v. Moulton Masonry & Construction, LLC*, 779 F.3d 182, 189 (2d Cir. 2015)*; Tamarin*, 13 F.3d at 53-54; *Maldonado v. La Nueva Rampa, Inc.*, No. 10-CV-8195, 2012 WL 1669341, at *2 (S.D.N.Y. May 14, 2012).  There is sufficient basis to do so here; no party has requested a hearing; and the Court has determined that one is not needed because damages can be calculated with reasonable certainty based on the papers before the Court.

For simplicity, the Court discusses liability and damages together for each respective claim.

## I.  FLSA AND NYLL CLAIMS

### A.    General Principles

The Court begins by addressing general principles concerning threshold FLSA requirements, employer status, the applicable time period for damages, and assessment of damages where there are violations of both the FLSA and the NYLL.

#### 1.  Threshold FLSA Requirement

The FLSA has an interstate commerce requirement, 29 U.S.C. § 203(b), which can be met on either an individual or enterprise basis.  *Jai Fu Chen v. New 9th Ave Pearl On*

*Sushi Inc.*, No. 14-CV-580, 2015 WL 3947560, at *3 (S.D.N.Y. June 29, 2015).  An enterprise is "engaged in commerce or in the production of goods for commerce" if (1) it "has employees engaged in commerce or in the production of goods for commerce" or "has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person" and (2) its "annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated)."  29 U.S.C. § 203(s)(1)(A)(i)-(ii).  The Complaint recites those legal elements in conclusory fashion (Compl. ¶¶ 38-39), and neither it nor the supporting declarations provide any direct facts establishing them.  However, the Court can reasonably infer that ASA qualifies as an enterprise because it is a for-profit college serving "thousands of students" in two different New York counties.  (Compl. ¶¶ 6-7.)  The FLSA thus applies, thereby preserving the basis for federal subject matter jurisdiction.

### 2.  Employer

The FLSA and NYLL impose liability on "employers."  Under the FLSA's broad definition, an employer is "any person acting directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C. § 203(d).  The NYLL is similarly broad, defining employer as "any person, corporation, limited liability company, or association employing any individual in any occupation, industry, trade, business or service."  NYLL § 190(3).  Courts generally interpret the definition of employer under both statutes coextensively.  *Gao v. Savour Sichuan Inc.*, No. 19-CV-2515, 2024 WL 664718, at *16 (S.D.N.Y. Feb. 16, 2024); *see also Weng v. New Shanghai Delux Corp.*, 19-CV-9596, 2022 WL 5434997, at *4 (S.D.N.Y. Oct. 7, 2022) ("courts in this district have applied the

same tests to determine whether an individual constitutes an employer under the FLSA and the NYLL"); *Hart v. Rick's Cabaret International, Inc.* 967 F. Supp.2d 901, 924 (S.D.N.Y. 2013) ("there appears to have never been a case in which a worker was held to be an employee for purposes of the FLSA but not the NYLL (or vice versa)").  "An individual may simultaneously have multiple 'employers,'" such that "'all joint employers are responsible, both individually and jointly, for compliance with all of the applicable provisions of the [FLSA].'"  *Martin v. Sprint United Management Co.*, 273 F. Supp.3d 404, 421 (S.D.N.Y. 2017) (quoting 29 C.F.R. § 791.2(a)).  The same is true under the NYLL. *Id.* at 422; *see Pineda v. Masonry Construction, Inc.*, 831 F. Supp.2d 666, 686 (S.D.N.Y. 2011) (finding three entities and one individual jointly and severally liable as employers under both FLSA and NYLL).

In determining whether an employment relationship exists, courts evaluate the "economic reality" of the relationship, looking beyond rigid corporate constructs to consider the functional realities facing employees.  *Goldberg v. Whitaker House Co-op., Inc.*, 366 U.S. 28, 33 (1961); *Irrizary v. Catsimatidis*, 722 F. 3d 99, 104 (2d Cir. 2013). Since the economic reality test is a "flexible concept to be determined on a case-by-case basis by review of the totality of the circumstances," different sets of factors may apply to different "factual challenges posed by particular cases."  *Barfield v. New York City Health and Hospitals Corp.*, 537 F.3d 132, 141-42 (2d Cir. 2008).

In *Barfield*, the Second Circuit identified two relevant formulations of the economic reality test:  (1) whether a formal employment relationship existed between the employees and a putative employer, and (2) whether an entity lacking formal control nevertheless could be considered a joint employer due to the "functional control" it

exercised over workers. *Id.* at 143. To assess whether an individual has the requisite formal control over employees, the Second Circuit has identified four core factors: "whether the alleged employer (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Carter v. Dutchess Community College*, 735 F.2d 8, 12 (2d Cir. 1984) (internal citation omitted). "No one of the four factors standing alone is dispositive." *Herman v. RSR Secret Services Limited*, 172 F.3d 132, 139 (2d Cir. 1999).

"Satisfying the four *Carter* factors 'may be sufficient to establish joint employment under the FLSA [but] it is not necessary to establish joint employment.'" *Fernandez v. HR Parking, Inc.*, 407 F. Supp.3d 445, 456 (S.D.N.Y. 2019) (citing *Zheng v. Liberty Apparel Co.,* 355 F.3d 71, 79 (2d Cir. 2003) and *Greenawalt v. AT&T Mobility LLC*, 642 F. App'x. 36, 37 (2d Cir. 2016) (summary order)). Even in the absence of the formal control described by the *Carter* factors, a defendant may be characterized as an employer for FLSA purposes if he or she exercises functional control over the workers in question. *Zheng*, 355 F.3d at 72. The Second Circuit has declined to circumscribe this analysis to a precise set of factors, noting instead that a district court is "free to consider any … factors it deems relevant to its assessment of the economic realities." *Id.* at 71-72; *accord Irrizary*, 722 F. 3d at 105.

Newman asserts that ASA, Shchegol, and Valencia were his employers. It is evident from the Complaint and Newman Declaration that ASA was Newman's employer. As for the individual Defendants, the Complaint asserts, generally, that both Shchegol and Valencia had the power to hire or fire, controlled the conditions of employment of

employees of ASA, determined the rate and method of payment of the employees, and maintained employment records.  (Compl. ¶ 41.)  Although conclusory, the allegations as to Shchegol are supported, at least in part, by the more specific facts that he owned ASA, served as President of ASA, exercised significant operational and financial control over ASA, set the financial terms of Newman's employment with ASA, and made promises about faculty pay.  (Compl. ¶¶ 8-9, 16, 25; Newman Decl. ¶ 4.)  Similarly, though thin, the specific allegations about Valencia establish that he served as President and authored emails from which it can be reasonably inferred that he controlled aspects of the terms of employment such as payment of wages, approving unemployment, and obtaining funding to finance payment of employees.  (Compl. ¶¶ 17, 26-35.)  The Court accepts as true that ASA, Shchegol, Valencia are jointly and severally liable as Newman's employer.

### 3.  Exempt Status

Under both the FLSA and NYLL, certain employees are exempt from receiving overtime pay.  The Second Circuit engages in a single analysis under the FLSA to resolve both FLSA and NYLL exemption defenses.  *See Ramos v. Baldor Specialty Foods, Inc.*, 687 F.3d 554, 556 n. 1 (2d Cir. 2012).  An exempt employee is "any employee employed in a bona fide executive ... capacity."  29 U.S.C. § 213(a)(1).  The United States Department of Labor has defined "employee employed in a bona fide executive capacity" to mean any employee:  (1) who is compensated on a "salary basis at a rate of not less than $455.00 per week …; (2) [w]hose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof; (3) [w]ho customarily and regularly directs the work of two or more other employees; and (4) [w]ho has the authority to hire or fire other employees or whose

suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight." *Elghourab v. Vista JFK, LLC*, 17-CV-0911, 2019 WL 2431905, at *7 (E.D.N.Y. June 11, 2019), *aff'd*, 818 F. App'x 63 (2d Cir. 2020) (citing 29 C.F.R. § 541.100(a)).  The employer bears the burden of demonstrating that an employee falls under a specific exemption.  *See Corning Glass Works v. Brennan*, 417 U.S. 188, 196–97 (1974) ("the application of an exemption under the [FLSA] is a matter of affirmative defense on which the employer has the burden of proof").

Here, although Newman held the position of Chair of a department, there is no evidence of the extent to which he directed the work of two or more people or had a role in hiring and firing other employees.  And, although Newman was promised a "salary" of $62,000 (in excess of the weekly monetary threshold), he in fact was paid on an hourly basis.  Accordingly, the Court concludes that Newman was not an exempt employee.

### 4.    Relevant Time Period

The statute of limitations is six years for claims under the NYLL, three years for claims under the FLSA if a defendant's acts are willful, and two years if they are not.  29 U.S.C. § 255(a); NYLL § 663(3); *see also Angamarca v. Pita Grill 7 Inc.*, No. 11-CV-7777, 2012 WL 3578781, at *4 (S.D.N.Y. Aug. 2, 2012), *R. & R. adopted* (S.D.N.Y. Dec. 14, 2012).  The Complaint was filed on April 26, 2023.  Newman seeks compensation for 2019-2022.  The entirety of Newman's claims fall within the NYLL limitations period, which

extends back to April 26, 2017.  As explained next, the shorter FLSA period is of no moment since Newman's damages will be awarded under the NYLL.

### 5.    Statute Providing The Greatest Recovery

Although "plaintiffs may not recover under both the FLSA and the NYLL for the same injury, courts allow plaintiffs to recover under the statute that provides for the greatest relief."  *Ni v. Bat-Yam Food Services. Inc.*, No. 13-CV-7274, 2016 WL 369681, at *1 (S.D.N.Y. Jan. 27, 2016) (internal quotation marks omitted).  The NYLL permits greater or equal recovery than the FLSA at all relevant times during Newman's employment.  Moreover, there are no damages at issue that Newman could recover only under the FLSA and not the NYLL, although there are claims under the NYLL for which there is no FLSA parallel.  Accordingly, the Court will apply the NYLL for all damages calculations.  *See Burns v. Scott*, 635 F. Supp.3d 258, 274 (S.D.N.Y. 2022) (adopting report and recommendation applying NYLL instead of FLSA because the NYLL "provides for equal or greater recovery" than FLSA); *Gomez v. NYHS Design Inc.*, No. 20-CV-4174, 2022 WL 4284143, at *3 (S.D.N.Y. Sept. 16, 2022) ("Because the NYLL provides for the greater recovery in [this] case, we address only the provisions of the NYLL"), *R. & R. adopted*, 2022 WL 6175174 (S.D.N.Y. Oct. 6, 2022).

### B.    Unpaid Regular Wages

The FLSA and the NYLL each require an employer to pay not less than a statutorily-set minimum wage for each hour of work.  *See* 29 U.S.C. § 206(a)(1); NYLL § 652(1); 12 NYCRR § 146-1.2(b).  Newman does not assert that the amount he received each year was less than the minimum wage.  Rather, he claims that he was not paid at all for his work from December 5, 2002 through February 24, 2023, a period of almost

twelve weeks. (FFCL at 9.) During that time, the New York State minimum wage was $15.00 per hour. 12 N.Y.C.R.R. § 146-1.2(a)(1)(i)(a). Having worked in excess of 40 hours each week, Newman is entitled to receive as unpaid regular wages an amount equal to 12 weeks x 40 hours x $15.00 per hour, or **$7,200**.

## C.    Overtime Pay

New York requires employers to pay employees "a wage rate of 1 ½ times the employee's regular rate for hours worked in excess of 40 hours in one workweek." 12 NYCRR § 146-1.4; *see also Nakahata v. New York-Presbyterian Healthcare System, Inc.,* 723 F.3d 192, 200 (2d Cir. 2013) (citing 12 NYCRR § 142-2.2). Although Newman alleges that time records were falsified to reflect no work in excess of 40 hours per week, he seeks overtime pay only for the 12-week period at the end of his employment for which he was not paid. (FFCL at 10.) As he worked 45-50 hours per week, it is reasonable to assign an average of 7.5 overtime hours per week. The applicable overtime rate is $27.50 per hour, being 1.5 times the regular minimum wage. Newman thus is entitled to overtime pay at an amount equal to 12 weeks x 7.5 hours x $27.50 per hour, or **$3,669.30**.

## D.    Unpaid Accrued Vacation Time

The FLSA does not protect accrued paid vacation time. *Arjumand v. Laguardia Associates, L.P.*, No. 14-CV-4618, 2015 WL 1470470, at *5 (E.D.N.Y. March 30, 2015) ("Under FLSA, '[e]mployees do not have a statutory entitlement to accrued vacation pay'"). The NYLL, however, does. A plaintiff may recover vacation pay under § 198 of the NYLL, because vacation pay is covered under the definition of "wages." *See* NYLL §§ 190, 198-c(2). Of course, for an employee to be entitled to such pay to begin with, the employer must have a policy or practice of paying accrued vacation time. *Tubo v. Orange*

14

*Regional Medical Center*, 690 F. App'x. 736, 740 (2d Cir. 2017) ("An employee's entitlement to receive payment for accrued, unused vacation time upon termination of employment is governed by the terms of the employer's publicized policy").

The well-pled facts show that ASA policy for full-time faculty included paid vacation, and that ASA had a practice or policy of paying for accrued but unused vacation time at the end of a full-time employee's employment.  (Newman Decl. ¶ 27; Compl. ¶ 72.)  At the time his employment terminated, Newman had accrued 40 hours of paid vacation time.  As of his last pay check, in December 2022, Newman was paid at an hourly rate of $27.18.  (*See* Newman Decl., Ex. E at ECF 6 ($1,835.37 divided by 67.52 hours).)  He therefore is entitled to recover accrued vacation time pay of 40 hours times $27.18 per hour, or **$1,087.20**.

## E.    Unlawful Deductions

Under the NYLL, "[n]o employer shall make any deduction from wages of an employee" unless expressly authorized by government law, regulation, or rule, or expressly authorized by the employee.  NYLL § 193.  Defendants illegally deducted $240 from Newman's pay that was not remitted to the third-party transit management company. Accordingly, Newman is entitled to recover $240 in unlawful deductions.  *See Humphrey v. RAV Investigative & Security Services Ltd.*, No. 12-CV-3581, 2016 WL 7190073, at *10 (S.D.N.Y.  Nov. 29, 2016) (finding plaintiff entitled to recover deductions for union dues that were not remitted to the union).

## F.    Liquidated Damages

Both the FLSA and the NYLL provide for liquidated damages.  Under the FLSA, any employer who violates the minimum wage and overtime provisions of the FLSA is

presumptively liable to the affected employees for, in addition to back pay, 100% of the unpaid wages as liquidated damages. 29 U.S.C. § 216(b) ("Any employer who violates the provisions … of this title [relating to minimum wages and overtime compensation] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation … and in an additional equal amount as liquidated damages"). Liquidated damages are awarded unless the employer demonstrates that they acted in good faith, in which case the decision to impose liquidated damages is discretionary. *Id*. § 260.

The NYLL rules are similar. *See Garcia v. Giorgio's Brick Oven & Wine Bar*, No. 11-CV-4689, 2012 WL 3339220, at *4 (S.D.N.Y. Aug. 15, 2012) ("Effective April 9, 2011, Sections 198(1-a) and 663(1) of the NYLL were amended to provide for liquidated damages equal to one-hundred percent of the amounts underpaid"), *R. & R. adopted*, 2012 WL 3893537 (S.D.N.Y. Sept. 7, 2012). As with compensatory damages, a plaintiff may recover liquidated damages for unpaid wages under either the FLSA or the NYLL, whichever provides for a greater recovery. *Morales v. Mw Bronx, Inc.*, No. 15-CV-6296, 2016 WL 4084159, at *10 (S.D.N.Y. Aug. 1, 2016). However, a plaintiff is not entitled to double recovery of liquidated damages. *Rana v. Islam*, 887 F.3d 118, 123 (2d Cir. 2018) (per curiam) ("We therefore interpret the NYLL and FLSA as not allowing duplicative liquidated damages for the same course of conduct").

Here, Defendants failed to pay Newman minimum wages, overtime wages, vacation pay, and an amount taken for an unlawful deduction totaling $12,965.50. Imposition of liquidated damages in this case is mandatory. By failing to appear in this action, Defendants are deemed to have acted willfully. *See Stokes v. MilkChocolateNYC*

*LLC*, No. 22-CV-6786, 2023 WL 447073, at *6 (S.D.N.Y. July 11, 2023) (collecting cases); *All-Star Marketing Group, LLC v. Media Brands Co., Ltd.*, 775 F.Supp.2d 613, 621 (S.D.N.Y. 2011) ("Defendants have defaulted … and by virtue of their default are deemed to be willful infringers").  Default aside, the Complaint alleges Defendants' knowing and willful conduct, supported by allegations that both Shchegol and Valencia knew that Newman and other faculty had not been paid as they should and made empty representations of efforts to obtain funding that never materialized.  (Compl. ¶¶ 20-35, 70.)  Accordingly, Newman is entitled to recover liquidated damages in the amount of **$12,965.50**, equal to 100 percent of the amount owed to them in unpaid wages.

## G.    Untimely Paid Wages

The NYLL requires employers to timely pay employees.  NYLL § 191.  The applicable rules depend on the type of employee.  For instance, there are specific rules for manual workers, railroad employees, and commissioned sales persons.  *Id.* § 191(a)-(c).  The remaining category, clerical "and other" worker, provides that wages be paid "in accordance with the agreed terms of employment, but not less frequently than semi-monthly, on regular pay days designated in advance by the employer."  *Id.* § 191(d).

A majority of courts in this Circuit have held that workers paid on an untimely basis necessarily incur a concrete harm due to the time value of money and thus have standing to claim damages under the same provisions.  *E.g.*, *Levy v. Endeavor Air Inc.,* 638 F. Supp.3d 324, 329 (E.D.N.Y. 2022), *recons. denied*, 2024 WL 1422322 (E.D.N.Y. March 29, 2024); *Beh v. Community Care Companions Inc.*, No. 19-CV-01417, 2022 WL 5039391, at *7-9 (W.D.N.Y. Sept. 29, 2022); *Gillett v. Zara USA, Inc.*, No. 20-CV-3734, 2022 WL 3285275, at *5-7 (S.D.N.Y. Aug. 10, 2022); *Caul v. Petco Animal Supplies, Inc.*,

No. 20-CV-3534, 2021 WL 4407856, at *2-4 (E.D.N.Y. Sept. 27, 2021); *but see Rosario v. Icon Burger Acquisition LLC*, No. 21-CV-4313, 2022 WL 198503, at *3 (E.D.N.Y. Jan. 21, 2022) (requiring allegations that plaintiff incurred injury from untimely payment such as lost opportunity to invest or to otherwise use the money); *Rath v. Jo-Ann Stores, LLC*, No. 21-CV-791, 2022 WL 3701163, at *8 (W.D.N.Y. Aug. 26, 2022) (same).  In any event, Newman has alleged concrete harm by having to take out a loan with interest and paying extra interest on his credit cards.  (Newman Decl. ¶ 32.)

For multiple periods in 2022, Newman was not paid on time; his bi-weekly pay was late by as little as a day and as much as three and a half weeks.  (*See id.* ¶¶ 31-32.)  Newman has not calculated his actual damages from being paid late.  Instead, he seeks an additional award of liquidated damages at a rate of one day's wages for every day he was paid late.  Although draconian (as the amount well exceeds the time value of money), support for such damages is found in the liquidated damages provision of NYLL § 198(1-a), which allows an employee to recover "an additional amount as liquidated damages equal to one hundred percent of the total amount of the wages found to be due."  Both state and federal courts have determined that "wages found to be due" encompasses untimely payment of wages, as well as nonpayment or partial payment of wages.  As one court has explained in awarding liquidated damages for bi-weekly payments, "Plaintiffs are entitled to recover liquidated damages equal to the total amount of all wages that were not paid in accordance with the law, including liquidated damages both for overtime wages that were not paid at all and for wages that were paid late."  *Bemejo v. Shaker Contractors., Corp.*, No. 22-CV-1427, 2022 WL 17251667, at *5 (S.D.N.Y. Nov. 28, 2022); *see also Carrera v. DT Hospitality Group*, No. 19-CV-4235, 2021 WL 6298656, at *11

(S.D.N.Y. Nov. 1, 2021) (awarding and calculating liquidated damages on default judgment for bi-weekly payments in violation of NYLL § 191), *R. & R. adopted*, 2021 WL 6298654 (S.D.N.Y. Dec. 7, 2021).

The Court adopts Newman's calculation of a day's wages during 2022 as follows: total number of hours per week (47.5) multiplied by the regular hourly rate for the first 40 hours multiplied by the 1.5 overtime premium rate for the remaining 7.5 hours – which equals $1087.20 – divided by five work days per week yields $278.60.  Newman was paid late a total of 39 days.  (*See* Newman Decl. ¶ 31; FFCL at 13.)  He thus is entitled to recover **$10,865.40** as liquidated damages for untimely payment of wages.

## II.   BREACH OF CONTRACT

The Complaint asserts three state common law claims.  However, Newman's unjust enrichment and quantum meruit claims are duplicative of his breach of contract claim, and his FFCL makes an argument only for breach of contract and resulting economic loss.  (FFCL at 14-15 and Conclusion ¶ (f).)  The Court thus assesses liability under only that cause of action.

To state a claim for breach of contract under New York law, "the complaint must allege:  (i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of [the] defendant to perform; and (iv) damages."  *Johnson v. Nextel Communications, Inc.*, 660 F.3d 131, 142 (2d Cir. 2011); *see also Terwilliger v. Terwilliger*, 206 F.3d 240, 246 (2d Cir. 2000) (applying New York law).  The well-pled allegations of the Complaint establish each of the required elements:  (1) ASA and Shchlegol entered into an oral contract that Newman would provide his services in exchange for $62,000 per year; (2) Newman performed his duties as required; (3)

Defendants breached the contract by failing to pay the full amount of Newman's salary; and (4) Newman incurred economic loss as a result. Defendants are liable to Newman for breach of contract.

As articulated by the Second Circuit, "'damages for breach of contract should put the plaintiff in the same economic position he would have occupied had the breaching party performed the contract.'" *Process America, Inc. v. Cynergy Holdings, LLC*, 839 F.3d 125, 143 (2d Cir. 2016) (quoting *Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 196 (2d Cir. 2003)). Under New York law, "[t]he damages an employee is entitled to recover for breach of an employment agreement are the amount of wages and other benefits he … would have received under the contract." *Siegel v. Laric Entertainment Corp.*, 307 A.D.2d 861, 862, 763 N.Y.S.2d 607 (1st Dep't 2003). While Newman was "'required to mitigate damages upon breach, the burden of proving a lack of diligent effort to mitigate damages is upon the defendants.'" *Wilkinson v. R. MacDonald Electricians, Inc.*, No. 03-CV-6441, 2006 WL 8456460, at *2 (W.D.N.Y. July 10, 2006) (quoting *Cornell v. T.V. Development Corp.*, 17 N.Y.2d 69, 74, 268 N.Y.S.2d 29, 33 (1966)). By defaulting, Defendants have failed to do.

Calculating Newman's economic loss damages for Defendants' breach of his employment contract is straight-forward. For each year he was paid less than $62,000, Newman's economic loss is the difference between what he was paid and $62,000. For 2019, Newman was paid $54,800.30, resulting in economic loss damages of $7,199.70. For 2020, Newman was paid $55,690.22, resulting in economic loss damages of $6,309.78. For 2021, Newman was paid $54,936.68, resulting in economic loss damages of $7,063.32. And, for 2022, Newman was paid $50,949.81, resulting in economic loss

damages of $11,050.19.  (*See* Newman Decl., Exs. A-D (Newman's yearly W-2s).)  The total of Newman's economic loss damages for those four years is $31,622.99.

To avoid double recovery, however, the Court considers whether Newman's breach of contract claim seeks damages that are duplicative of his statutory wage and hour claims.  Breach of contract claims are compatible with both FLSA and NYLL claims if the damages sought are for different wrongs.  *See, e.g.*, *Mendez v. U.S. Nonwovens Corp.*, 2 F. Supp.3d 442, 454-55 (E.D.N.Y. 2014) (stating that "District courts in this Circuit have permitted plaintiffs to proceed on … breach of contract claims for straight wages in conjunction with FLSA and NYLL overtime claims") (citing cases); *DeSilva v. North Shore–Long Island Jewish Health Systems, Inc.*, 770 F. Supp.2d 497, 530 (E.D.N.Y. 2011) (explaining that while "the Court finds that the FLSA preempts the state common law claims [including breach of contract claims] that are based upon defendants' alleged failure to fully compensate plaintiffs for all overtime hours worked, … the common law claims [including breach of contract claims] that are based upon the alleged failure to properly compensate plaintiffs for 'straight time' wages are not duplicative of the FLSA cause of action, and therefore are not preempted").

Here, the damages that Newman seeks for breach of contract are, for the most part, not duplicative of his FLSA and NYLL claims.  For breach of contract, Newman claims economic loss by which his actual pay diverged from his promised yearly salary of $62,000 during 2019 through 2022.  The period for which Newman seeks an award of unpaid regular and overtime wages under the NYLL and FLSA is for the twelve-week period for which he did not receive any pay from December 5, 2022 through February 24, 2024.  The only portion of that period that overlaps with the period to which Newman's

breach of contract covers is 26 days, being December 5 to December 31, 2022, representing at most 19 work days (accounting for three weekends and one day off for Christmas).  Additionally, the $240 deduction (made in 2022) and unpaid accrued vacation pay of $1,087.20 are duplicative – had Newman received his full "salary" of $62,000 each year, he would have been paid for his accrued vacation time and not had an unlawful deduction taken.  Accordingly, the following amounts should be deducted from Newman's economic loss damage calculation:  $240, plus $1,087.20, plus an amount equal to the unpaid wages awarded to Newman pursuant to the NYLL for 19 work days during December 2022.  Using the daily wages calculated above in the context of untimely payment, that latter figure is $5,293.40 (being 19 times the daily rate of $278.60). The total amount that should be deducted from breach of contract damages thus totals $6,620.60.  Subtracting that amount from the economic loss calculation results in breach of contract damages of **$25,002.39**.

### III.    PRE-JUDGMENT INTEREST

Newman seeks pre-judgment interest on both his unpaid wages claims and his breach of contract claim.

### A.    Pre-Judgment Interest For FLSA And NYLL Claims

Under the FLSA, awards of liquidated damages serve, in part, as a form of compensatory pre-judgment interest.  *See, e.g.*, *Galeana v. Lemongrass On Broadway Corp.*, 120 F. Supp.3d 306, 321 (S.D.N.Y. 2014); *Yu G. Ke v. Saigon Grill, Inc.*, 595 F. Supp.2d 240, 261 (S.D.N.Y. 2008).  A plaintiff who receives FLSA liquidated damages therefore may not also receive pre-judgment interest.  *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1064 (2d Cir. 1988).  In contrast, liquidated damages under the NYLL are

considered punitive in nature, thus enabling a plaintiff to recover both liquidated damages and pre-judgment interest. *Yu G. Ke,* 595 F. Supp.2d at 262 (citing *Reilly v. NatWest Markets Group, Inc.*, 181 F.3d 253, 265 (2d Cir. 1999)); *Ting Yao Lin v. Hayashi Ya II, Inc.*, No. 08-CV-6071, 2009 WL 289653, at *7 (S.D.N.Y. Jan. 30, 2009), ("The Second Circuit has held that even where a plaintiff is awarded liquidated damages under New York Labor Law, prejudgment interest … is appropriate"), *R. & R. adopted sub nom.*, 2009 WL 513371 (S.D.N.Y. Feb. 27, 2009). Accordingly, Newman is eligible to recover pre-judgment interest on his state law unpaid wage claims at the statutory rate of 9% per annum. *See* NY CPLR §§ 5001, 5004; *see, e.g.*, *Gurung v. Malhotra*, 851 F. Supp.2d 583, 594 (S.D.N.Y. 2012) (applying pre-judgment interest rate to NYLL claims); *Santillan v. Henao*, 822 F. Supp.2d 284, 298 (E.D.N.Y. 2011) (same).

"The Court has discretion to choose a reasonable date from which prejudgment interest should accrue." *Junmin Shen v. Number One Fresco Tortillas, Inc.*, No. 16-CV-2015, 2018 WL 6712771, at *14 (S.D.N.Y. Nov. 26, 2018) (citing *Santana v. Latino Express Restaurants, Inc.*, 198 F. Supp.3d 285, 294-95 (S.D.N.Y. 2016)). Where unpaid wages accumulate over time rather than all being payable at once, courts "often choose the midpoint of the plaintiff's employment within the limitations period." *Id.*, at *14 (quoting *Gamero v. Koodo Sushi Corp.*, 272 F. Supp.3d 481, 515 (S.D.N.Y. 2017), *aff'd*, 752 F. App'x 33 (2d Cir. 2018) (internal quotation marks omitted)). Here, most of Newman's FLSA and NYLL unpaid wages date to the period of December 5, 2022 to February 24, 2023. The midpoint of that period is approximately January 15, 2023. Accordingly, Newman should receive pre-judgment interest on his unpaid wages of $12,196.50 at the rate of nine percent starting from January 15, 2023.

**B.    Pre-Judgment Interest On Breach Of Contract Claim**

Newman also is entitled to pre-judgment interest on his breach of contract damages.  State law governs the award of pre-judgment interest on Newman's state common law claim.  *See Schipani v. McLeod*, 541 F.3d 158, 164-65 (2d Cir. 2008).  The Court thus applies New York law, which provides that pre-judgment interest "shall be recovered upon a sum awarded because of a breach of performance of a contract."  N.Y. C.P.L.R. § 5001(a); *see also U.S. Naval Institute v. Charter Communications, Inc.*, 936 F.2d 692, 698 (2d Cir. 1991) ("a plaintiff who prevails on a claim for breach of contract is entitled to prejudgment interest as a matter of right").  As for timing, "[i]nterest shall be computed from the earliest ascertainable date the cause of action existed[.]"  N.Y. C.P.L.R. § 5001(b).  Under New York law, a cause of action for breach of contract generally accrues at the time of breach.  *Guilbert v. Gardner*, 480 F.3d 140, 149 (2d Cir. 2012) (citing *Ely–Cruikshank Co. v. Bank of Montreal*, 81 N.Y.2d 399, 402, 599 N.Y.S.2d 501, 502 (1993)).  Here, Defendants breached their contractual obligations at the end of each calendar year that they did not pay Newman his full salary; in other words, the starting date for interest for each of the four years that Newman was paid less than what he was promised is January 1 of the following year.  Rather than calculate pre-judgment interest for each year's underpayment separately, the Court finds it reasonable to use the midpoint for the four-year period – January 1, 2021.  Newman thus should receive pre-judgment interest at the rate of nine percent on economic loss damages for breach of contract totaling $25,002.39 starting from January 1, 2021.

## IV.    ATTORNEY'S FEES AND COSTS

### A.    Fees

Newman seeks compensation for $5,240 in attorneys' fees.  (Clark Decl. ¶ 9.)  The FLSA and NYLL provide for an award of reasonable attorneys' fees and costs to a prevailing plaintiff in a wage-and-hour action such as this one.[2]  29 U.S.C. § 216(b); N.Y. Lab. Law § 198(1-a); *Callari v. Blackman Plumbing Supply, Inc.*, No. 11-CV-3655, 2020 WL 2771008, at *6 (E.D.N.Y. May 4, 2020) ("Both the FLSA and NYLL are fee-shifting statutes which entitle a plaintiff to an award of reasonable attorney's fees and costs in wage-and-hour actions"), *R. & R. adopted*, 2020 WL 2769266 (E.D.N.Y. May 28, 2020).

The traditional approach to determining a fee award is the "lodestar" calculation, which is the number of hours expended multiplied by a reasonable hourly rate.  *See Healey v. Leavitt*, 485 F.3d 63, 71 (2d Cir. 2007); *Tackie v. Keff Enterprises LLC*, No. 14-CV-2074, 2014 WL 4626229, at *6 (S.D.N.Y. Sept. 16, 2014).  The Second Circuit has held that "the lodestar … creates a 'presumptively reasonable fee.'"  *Millea v. Metro-North Railroad Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (first quoting *Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany*, 522 F.3d 182, 183 (2d Cir. 2008, and then citing *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010)); *see also Stanczyk v. City Of New York*, 752 F.3d 273, 284-85 (2d Cir. 2014) (reaffirming *Millea*).  To arrive

---

[2] "The fact that a large portion of plaintiffs' damages come from a common law breach of contract claim, rather than the FLSA or the NYLL, also does not create an obstacle for the recovery of attorneys' fees because it is clear that the successful breach of contract claim was 'inextricably intertwined' and involved a 'common core of facts' with the FLSA and the NYLL overtime claim and did not require additional work."  *Douglas v. Spartan Demolition Company LLC*, No. 15-CV-5126, 2018 WL 4521212, at *8 n.9 (S.D.N.Y. Sept. 21, 2018) (citing, *inter alia*, *Dominic v. Consolidated Edison Co. of New York, Inc.*, 822 F.2d 1249, 1259-60 (2d Cir. 1987)).

at a lodestar calculation, "[t]he party seeking an award of [attorneys'] fees should submit evidence supporting the hours worked and rates claimed." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Newman has submitted such evidence here, consisting of a contemporaneous record of time expended by counsel. (Clark Decl. ¶ 6 and Ex. A.)

### 1.    Hourly Rates

Courts assess the reasonableness of a proposed hourly rate by considering the prevailing market rate for lawyers in the district in which the ruling court sits. *Polk v. New York State Department of Correctional Services*, 722 F.2d 23, 25 (2d Cir. 1983). "The rates used by the court should be current rather than historic hourly rates." *Reiter v. Metropolitan Transportation Authority Of New York*, 457 F.3d 224, 232 (2d Cir. 2006) (internal quotation marks and citations omitted). "[C]ourts may conduct an empirical inquiry based on the parties' evidence or may rely on the court's own familiarity with the rates if no such evidence is submitted." *Wong v. Hunda Glass Corp.*, No. 09-CV-4402, 2010 WL 3452417, at *2 (S.D.N.Y. Sept. 1, 2010) (internal quotation marks and citations omitted). Additionally, "the range of rates that a plaintiff's counsel actually charges their clients … is obviously strong evidence of what the market will bear." *Rozell v. Ross-Holst*, 576 F. Supp.2d 527, 544 (S.D.N.Y. 2008); *see also Lilly v. County Of Orange*, 910 F. Supp. 945, 949 (S.D.N.Y. 1996) ("The actual rate that counsel can command in the market place is evidence of the prevailing market rate").

Newman is represented in this action by Justin S. Clark, a non-equity partner of Levine & Blit, PLLC. He is the only time-keeper whose time is billed on the matter. He focuses on employment law, including cases for unpaid wages and has eleven years of experience litigating in that area. (Clark Decl. ¶¶ 1-5.) The rate sought for Clark is his

regular hourly rate of $400.  The Court finds that that rate is reasonable for a lawyer with Clark's experience for unpaid wage cases in this District.  *See, e.g.*, *Ke v. J R Sushi 2 Inc.*, No. 19-CV-7332, 2024 WL 1891195, at *3 (S.D.N.Y. Apr. 30 2024) ("Courts in this District have determined that a fee ranging from $250 to $450 [per hour] is appropriate for experienced litigators in wage-and-hour cases") (internal quotation marks and citation omitted); *Chen v. Shanghai Café Deluxe, Inc.*, No. 16-CV-4790, 2023 WL 2401376, at *15 (S.D.N.Y. March 8, 2023) (same); *see also Cuba v. Shadwick Inc.*, No. 23-CV-05329, 2023 WL 8373009, at *2 (S.D.N.Y. Dec. 4, 2023) ($400 per hour for the head of a small firm in an FLSA action "is commensurate with similarly experienced senior attorneys in the field"); *De La Cruz v. Trejo Liquors, Inc.*, No. 16-CV-4382, 2019 WL 9573763, at *18 (S.D.N.Y. Sept. 10, 2019) ("For partners or heads of small law firms practicing in this area, the Court has usually approved hourly rates in the $300 to $450 range"), *R. & R. adopted*, 2020 WL 4432298 (S.D.N.Y. July 30, 2020).

### 2.    Hours Worked

To determine compensable hours, "the court must examine the hours expended by counsel and the value of the work product of the particular expenditures to the client's case." *Tlacoapa v. Carregal*, 386 F. Supp.2d 362, 371 (S.D.N.Y. 2005) (citing *Gierlinger v. Gleason*, 160 F.3d 858, 876 (2d Cir. 1998)).  "In making this examination, the district court does not play the role of an uninformed arbiter but may look to its own familiarity with the case and its experience generally as well as to the evidentiary submissions and arguments of the parties."  *Gierlinger*, 160 F.3d at 876 (quoting *DiFilippo v. Morizio,* 759 F.2d 231, 235–36 (2d Cir.1985)).  "The relevant issue ... is not whether hindsight vindicates an attorney's time expenditures, but whether, at the time the work was

performed, a reasonable attorney would have engaged in similar time expenditures." *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992); *see also Mugavero v. Arms Acres, Inc.*, No. 03-CV-5724, 2010 WL 451045, at *6 (S.D.N.Y. Feb. 9, 2010) (same).  A court thus should exclude from the lodestar calculation "excessive, redundant or otherwise unnecessary hours."  *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999); *see also Luciano v. Olsten Corp.*, 109 F.3d 111, 116 (2d Cir. 1997) ("If the district court concludes that any expenditure of time was unreasonable, it should exclude these hours from the lodestar calculation").

The time records submitted reflect that Clark worked a modest 13.1 hours on this matter.  (Clark Decl., Ex. A.)  The Court finds the overall number of hours to be reasonable for having prepared a complaint, filed for default, moved by order to show cause for default judgment, and prepared proposed findings of fact and conclusions of law in a wage-and-hour case such as this one.  The work appears to have been performed efficiently and without redundancy, and the billing entries do not include administrative tasks or other work more appropriately performed by someone else.

Accordingly, the Court finds that Newman should be awarded fees of **$5,240**.

## B.    Costs

Newman seeks $779.80 in costs for the court filing fee, service on Defendants, and the transcript of the order to show cause hearing.  (Clark Decl. ¶¶ 10-11 and Ex. B.)  Those expenses are routinely recoverable.  *See e.g.*, *Angamarca*, 2012 WL 3578781, at *14 (approving $350 court filing fee and $600 in service of process fees for default judgment in FLSA and NYLL case); *Malletier v. Artex Creative International Corp.*, 687 F. Supp.2d 347, 365 (S.D.N.Y. 2010) (costs such as filing fees, shipping costs, and research

fees are "typically awarded when a defendant defaults") (citing *Arbor Hill Concerned Citizens Neighborhood Association*, 369 F.3d at 98).  Costs associated with transcripts, docket fees, and other miscellaneous fees may also be recovered pursuant to Local Civil Rule 54.1.

The Court has reviewed Newman's submissions, which include invoices for each charge, and finds the costs set forth are recoverable.  Accordingly, Newman should be awarded **$779.80** in costs.

## CONCLUSION

For the foregoing reasons, I recommend awarding Plaintiff judgment against Defendants, jointly and severally, for the following monetary relief:

1. Unpaid wages in an amount of $12,196.50.

2. Liquidated damages on unpaid wages in an amount of $12,196.50.

3. Liquidated damages for untimely payments in an amount of $10,865.40.

4. Damages for breach of contract in an amount of $25,002.39.

5. Pre-judgment interest on unpaid wages of $12,196.50 at the rate of nine percent, starting from January 15, 2023.

6. Pre-judgment interest on breach of contract damages of $25,002.39 at the rate of nine percent starting from January 1, 2021.

7. Attorney's fees in an amount of $5,240.00

8. Costs in an amount of $779.80.

**SERVICE**

Plaintiffs shall serve a copy of this Report and Recommendation on Defendants within two days of entry and shall file proof of service of same within two days following service.

**DEADLINE FOR OBJECTIONS AND APPEAL**

Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules Of Civil Procedure, the parties shall have fourteen (14) days to file written objections to this Report And Recommendation.  Any party shall have fourteen (14) days to file a written response to the other party's objections.  Any such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the Chambers of the Honorable Katharine Polk Failla, United States Courthouse, 40 Foley Square, New York, New York 10007, and to the Chambers of the undersigned, at United States Courthouse, 500 Pearl Street, New York, New York 10007.  Any request for an extension of time for filing objections must be addressed to Judge Failla.  **Failure to file timely objections will result in a waiver of the right to object and will preclude appellate review.**

Respectfully Submitted,

_____
ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE

Dated: August 29, 2024
　　　 New York, New York

Copies transmitted this date to all counsel of record.